FILED

2009 Sep-15  PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

**CHAD GAMBRILL,**

      **Plaintiff,**

**v.**                            **CIVIL ACTION NO.**
                                     **2:08-cv-1966-IPJ**

**CULLMAN COUNTY BOARD OF
EDUCATION, et al.,**

      **Defendants.**

## MEMORANDUM OPINION

Pending before the court are cross-motions for summary judgment (docs. 25 & 28), defendant's supporting brief and evidentiary materials (docs. 26 & 27), plaintiff and defendants' response briefs, (docs. 31 & 32), and plaintiff and defendants' reply briefs (docs. 33 & 34).

## I. FACTUAL BACKGROUND

Plaintiff sues his employer for discrimination on the basis of his military involvement in violation of the Uniform Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. § 4301 *et seq*.  Plaintiff was a member of the Alabama Army National Guard from 1996 until February 22, 2008. (Gambrill Declaration, doc. 32-1, at 1).  He applied for the position of assistant

principal at Hanceville Middle School ("HMS") in July of 2007, for the position of

assistant principal at Good Hope Elementary ("GHE") in 2008, and for the position

of principal at Holly Pond Elementary ("HPE") in 2008.  (Gambrill Depo., at 43).

In 2007, when he applied to HMS, plaintiff had obtained the rank of captain and

was serving in an administrative role at the Alabama Military Academy, which is

responsible for training all commissioned officers and warrant officers in the

southeastern region.  (Gambrill Depo., at 214-217).  He served in this capacity for

one weekend each month and during the summer months.  (Gambrill Depo., at

217).  Plaintiff was a member of the military when he first applied to the Cullman

County School Board for a position, which he received, at GHE in 2000.  (Gambrill

Resume, doc. 27-2; Gambrill Depo., at 25).

<u>Hanceville Middle School Position</u>

Prior to his application for the HMS position in 2007, Plaintiff met with

HMS principal Paul Anderson to introduce himself and discuss the position.  The

two gentlemen did not know each other prior to the meeting.  Plaintiff's account of

the meeting is that Anderson asked him questions that were inappropriate for a job

candidate.  Plaintiff stated that Anderson asked him if and where he went to church

and if he planned to go back overseas for the military.  (Gambrill Declaration, doc.

13-1, at ¶¶ 4-5).  Anderson described the meeting as a "getting to know each

other"-type of meeting, explained that he asked plaintiff if he might be sent to Iraq, and stated, "I asked this as I would ask anyone – going to Iraq would be dangerous."  (Anderson Affidavit, doc. 8-1, at 2-3).  In response to the question, plaintiff explained that he had nine years until military retirement and deployment during that time period would be likely; however, he explained his current position was a non-deployable position.  After this initial meeting, plaintiff claims that Anderson described plaintiff as one of the top three candidates for the position. (Gambrill Declaration, doc. 13-1, at ¶¶ 5-6)**.**

The interview panel for the HMS position consisted of Principal Anderson; Ms. Debbie Abbott, a counselor at HMS; and Ms. Sheila Kretzschmar, a member of the Cullman County Board of Education.  (Kretzschmar Depo., at 27-28; Anderson Affidavit, doc. 8-1, at 1).  Anderson selected Abbott and Kretzschmar to participate in the interview panel and he brought a list of fourteen prepared questions to the interview.  Some of the questions were sample questions provided on the website of the National Middle School Association for use in interviews. (Anderson Depo., at 38-48).  Two additional questions were added before the interviews began, one about how the applicant would deal with an incident on a school bus and the second about other jobs or activities that would interfere with being HMS assistant principal.  (Anderson Depo., at 39-40).  Anderson believes he suggested the latter

question, although Kretzschmar says it was added due to the "general consensus" among the three interviewers; the question was formulated because one of the applicants, Jimmy Collins, owned a lawn care business and the interview panel wanted to hear an explanation about Collins' involvement with it.  (Anderson Depo., at 40, 49; Kretzschmar Depo., at 23-24, 26-27; Abbott Depo., at 27-28). Kretzschmar explained, "[W]e wanted to make sure that if [Collins] was the person chosen for this job that he would be able to do it. Because, you know, there's summertime things that need to be done that you can't get done in nine and a half months. You know, that's just the way it is." (Kretzschmar Depo. at 26-27).  All of the applicants were asked the same questions.  Superintendent Hank Allen stated that the criteria used to evaluate candidates for a particular position is determined by "the specificity of the position itself."  (Allen Depo., at 19-20).

Plaintiff argues that the manner in which he was questioned about his "other jobs or activities" manifested an anti-military bias on the part of the interview panel and his military involvement was a motivating factor for not being promoted to assistant principal.  (Gambrill Depo., at 127, 149-50, 192-94).  In response to this question during the interview, he responded that he had no other obligations that would interfere with his position as HMS assistant principal, if he were given the position.  Anderson followed-up: "What about the military? It is obvious that you

4

are heavily involved." Abbott then commented that "she couldn't see how a conflict could be avoided due to [plaintiff's] level of involvement in the military." (Gambrill Declaration, doc. 13-2, ¶ 9). Plaintiff responded that his military obligations and experience would complement, rather than hinder or interfere with, his ability to do the job. (Anderson Depo,. at 23; Abbott Depo., at 25, 30). Plaintiff also stated that he had good time-management skills. After Anderson asked plaintiff to share "what you told me the other day about you know . . . deployment," plaintiff explained that it was unlikely he would be deployed. Anderson stated that he asked this question to ensure plaintiff was given fair consideration by the other interviewers. (Anderson Depo., at 53). In total, plaintiff estimates he spent  ten minutes of the interview answering questions about his military obligations, (Gambrill Declaration, doc. 13-2,  ¶ 9), and described this part of the interview as being "drilled." (Gambrill Email to Allen, doc. 12-2).

　　After interviews of all of the applicants were completed, the three members of the interview panel, at the direction of Anderson, independently ranked who he or she thought were the top three candidates. Anderson and Abbott selected the same three people, in descending order of preference: Jimmy Collins, Buddy Kilgo, and Kim Brown. Kretzschmar agreed with the first and second choices of Anderson and Abbot, but chose Rhonda Jett as the third best candidate. (Abbott

Depo., at 38).  The panel did not discuss plaintiff or his military involvement at any point after his interview.  (Abbott Depo., at 38-39; Anderson Depo., at 55).

The panel selected Collins as the most qualified applicant because he had been at the school for ten years as a teacher; filled in as an assistant principal on several occasions; was named teacher of the year twice; served on the budget, textbook, and scheduling committees; was well-respected by the faculty, community, and students; worked well with the principal; led the school's baseball team to two state championships; and had demonstrated leadership and administrative skills.  (Anderson Affidavit, at 2-3; Anderson Depo., at 16, 28-29; Kretzschmar Depo. 35-37; Abbott Depo., at 13-18).  Abbott and Kretzschmar also found that Collins was particularly well-suited for teaching and dealing with middle school aged students.  (Abbott Depo., at 15-16; Kretzschmar Depo., at 34-37).  Kretzschmar was impressed by the empathy, dedication, and loyalty that Collins' showed during his interview.  (Kretzschmar Depo., at 33-37).

Plaintiff was not ranked as one of the top three applicants.  The panelists found that plaintiff "was not as well qualified as a number of the applicants" because he had no administrative experience in a public school.  (Anderson Affidavit, at 3).  He had never been selected as teacher of the year, (Gambrill Depo., at 142-43); his only experience at a middle school was as an aide for one

year; (Gambrill Depo., at 131-32); he had never served on a budget committee at a middle school, though he does have "budgetary experience," (Gambrill Depo., at 136-37); and he had never served on a textbook committee at a middle school, though he had done so at an elementary school (Gambrill Depo., at 137-38). During his interview, Kretzschmar found that the plaintiff was "unfeeling" and stated he "came across as being very – with no compassion for the purpose, the purpose that I was looking for, the purpose of enjoying children of that age." She continued, "when he was asked . . . how have you made a positive influence on the lives of students[,] . . . [h]e couldn't tell us how he made a positive impact on one child." (Kretzschmar Depo., at 34-35). Anderson considered plaintiff's military experience as an asset and as experience in "administration," but not as administrative experience in a public school context. (Anderson Affidavit, doc. 8-1, at 3). Anderson stated that plaintiff's military obligation "was not the reason other people were deemed more experienced. The reason they were deemed more experience[d] was because they had more experience as public school administrators." (Anderson Affidavit, doc. 8-1, at 4).

As is normal practice, Anderson forwarded Collins' name to the superintendent, Hank Allen, with his recommendation that Collins fill the vacant position. At this time, neither plaintiff's name nor his military involvement were

mentioned.  (Allen Depo., at 24-26; Anderson Depo., at 55).  Also as is normal

practice, Allen did not make further investigation into whether Collins was the

most qualified before he recommended Collins to the Cullman County Board of

Education.  (Allen Depo., at 26-27; Anderson Affidavit, at 1; Kretzschmar Depo.,

at 32-33).  Board members Schuman, Freeman, and Lynn made no comments

suggesting anti-military bias, and plaintiff has no information that any board

member discussed his military experience. (Gambrill Depo., at 20-22, 40-41, 165).

Both Anderson and Allen stated they would have made the same decision even if

plaintiff had no military involvement.  (Anderson Depo., at 53; Allen Affidavit, at

3).

        During this time, HMS employed two other individuals in the uniformed

services.  Charles Clingman is a physical education teacher who is serving his

second tour in Iraq.  After his first tour, the school hosted an assembly and

reception; Abbott helped with the reception.  Additionally, Kathy Bradford is an

Air Force reservist who teaches at HMS.  She serves one or two days each month.

(Abbott Depo., 31-32).

Good Hope Elementary Position

        Sometime in 2008, plaintiff applied for an assistant principal position at

Good Hope Elementary; he did not receive an interview for the position and alleges

8

this is because of anti-military bias.  One year prior, in July 2007, plaintiff had

applied for an assistant principal position at GHE. Annette Creest, the principal of

the school, handled the interview process herself.  Creest interviewed five of the

fifteen applicants, one of whom was plaintiff; after the interviews, plaintiff was

ranked as the fourth best applicant.  (Creest Affidavit, at 1-2).  Plaintiff was not

ranked higher because of his lack of experience in public school administration and

middle school education: all of his experience in public education was with much

younger students or a specialized field.  (Creest Affidavit, at 4).  Further, plaintiff

would need further training before he could fill out teacher evaluations and Creest

was looking for someone who was already qualified.  (Creest Affidavit, at 4).

After the individual who Creest selected for the 2007 position, Cyndi Roden,

left to become principal at HMS in 2008, Creest created a committee to interview

new applicants to fill the vacancy left by Roden.  Creest claims she alone decided

who to interview, (Creest Affidavit, at 6), while plaintiff claims a committee at "the

central office" determined who to interview.  (Gambrill Depo., at 183). Creest

states she chose not to interview plaintiff because she had interviewed him the year

prior, and at that time, he had not been one of the three most-qualified applicants.

She also knew that he gained only one additional year of teaching and she did not

believe his educational philosophy had changed.  She reviewed plaintiff's

interview from the previous year and stated that, with his resume still on file and

knowing that he wanted the position, if she did not interview more qualified

applicants, she would consider plaintiff.  (Creest Affidavit, at 5-7).

Ultimately, all three committee members concluded Richard Orr was the

most qualified candidate.  Orr already had experience as assistant principal in

Madison County, one of the best school systems in Alabama.  The committee found

he "was knowledgeable, experienced, and was very impressive in his interview."

(Creest Affidavit, at 7).  Plaintiff was "not anywhere near Mr. Orr in terms of

experience and qualifications.  Mr. Orr knew the job; communicated that

knowledge during the interview; and impressed all the members of the committee

that he was the best person for the position."  (Creest Affidavit, at 8).

Plaintiff does not allege that Creest "demonstrated any type of violation or

anything unethical," (Gambrill Depo., at 183), and Creest maintains that plaintiff's

"military involvement was not a consideration or a factor in deciding who was the

best qualified person."  (Creest Affidavit, at 5).

Holly Pond Elementary Position

Sometime in 2008, plaintiff applied for a principal position at Holly Pond

Elementary. Thirteen others applied and twelve, including plaintiff, were

interviewed.  A panel of at least four, but perhaps five (Schuman Affidavit, at 1;

Gambrill Depo., at 172-73), conducted interviews.   Plaintiff was not among the

three finalists selected.  (Schuman Affidavit, at 1).  When determining the finalists,

the panel focused on experience as educators and knowledge about the school's

unique situation regarding recent personnel changes that were "unsettling" to the

school and community.  These factors were evaluated based on the responses to

questions asked during the interview, and the three finalists gave answers that

better demonstrated their knowledge and sensitivity about the situation. (Schuman

Affidavit, at 2).

Karen Sparks was chosen for the position.  She had worked at Holly Pond

for nineteen years; knew the faculty, students, and parents; and was familiar with

the curriculum and assessments of the school, as well as areas that needed

improvement.  She demonstrated that she was familiar with academic progress at

the school and shared her thoughts on the school's improvement plan.  She had

extensive knowledge about relevant federal programs and served the school in

several leadership positions; for instance, she supervised one-third of the faculty.

(Schuman Affidavit, at 4-5).

Plaintiff "had no meaningful linkage to, involvement with, or knowledge

about the school or community."  (Allen Affidavit, at 5).  During his interview,

plaintiff discussed his military involvement to demonstrate his administrative

experience.  No person on the interviewing committee asked about his military involvement, and such involvement was not mentioned by any member of the committee at any time.  (Schuman Affidavit, at 2-3).  Prior to, during, and after plaintiff's interview, no member of the interview panel said anything to plaintiff that indicated a military bias.  (Gambrill Depo., at 174-75).  Allen would have recommended Sparks for the position even if plaintiff was not involved in the military.  (Allen Affidavit, doc. 27-13, at 6).

Plaintiff claims that reporting the alleged discrimination occurring during the HMS interview adversely affected his application and the selection process at Holly Pond.  Based on the statement of a coworker at Good Hope Primary School, plaintiff stated that Sparks did not have certification from the State Department at the time of beginning as principal at Holly Pond. According to plaintiff, that Sparks received the principal position while not being certified and having no administrative experience shows that "reporting [the alleged HMS violation] has impacted [his] ability to move forward."  (Gambrill Depo., at 179).

## II. Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law.  *See* FED. R. CIV. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The facts, and any reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970).  Once met by the moving party, however, the burden shifts to the nonmovant to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).  In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or merely be colorable.  *See* FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986).  Speculation does not create a

genuine issue of fact.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.

2005).

The court must consider the evidence in the light most favorable to the

plaintiff and may not make credibility determinations nor weigh the parties'

evidence.  *Frederick v. Spring/United Management Co.* 246 F.3d 1305, 1311 (11th

Cir. 2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.

2000).

## III. Analysis

USERRA prohibits employers of uniformed servicemen and women from

considering an individual's military service or obligation when making decisions

about a serviceman or servicewoman's employment, reemployment, retention in

employment, promotion, or any benefit of employment. 38 U.S.C. § 4311(a).  The

employer engages in prohibited conduct if the employee's membership in or

obligation to the uniformed services is a motivating factor of the employer's

decision.  38 U.S.C. § 4311(c)(1).  The claimant in a USERRA case bears the

initial burden of proving by a preponderance of the evidence that his or her military

involvement was a motivating factor in the adverse employment action.  *Coffman v.*

*Chugach Support Services, Inc.*, 411 F.3d 1231, 1238-39 (11th Cir. 2005) (citing

14

*Brandsasse v. City of Suffolk*, 72 F.Supp.2d 608, 617 (E.D. Va. 1999)).

A motivating factor need not be the sole reason for the employment action; rather it must be "one of the factors that a truthful employer would list if asked for the reasons for its decision. . . .  [M]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Id.* at 1238 (citations omitted). Discriminatory motive may be inferred from certain facts, such as, "inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." *Id.*

If the claimant meets this requirement, the employer may avoid liability by establishing an affirmative defense.  The defendant must prove by a preponderance of the evidence that he would have taken the adverse action despite the plaintiff's protected status.  38 U.S.C. § 4311(c)(1); *Coffman*, 411 F.3d at 1238-39 (citing *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001)).  To meet its burden, the defendant must do more than merely show that the decision was motivated in part by a legitimate reason.  *Smith v. School Board of Polk County, Florida*, 205 F.Supp. 2d 1308, 1315 (M.D.Fla. 2002) (citing *Robinson v. Morris*

*Moore Chevrolet-Buick, Inc.*, 974 F.Supp. 571, 576 (E.D. Tex. 1997)).  Rather,

defendant must satisfy a "but for" test, showing "that legitimate reasons, standing

alone, would have induced [him] to take the same adverse action." *Coffman*, 411

F.3d at 1238-39 (quoting *Sheehan*, 240 F.3d 1014); *see* H.R. Rep. 103-65(I), at 24

(1993) ("Section 4311(b) would reaffirm that the standard of proof in a

discrimination or retaliation case is the so-called 'but for' test and that the burden

of proof is on the employer, once a prima facie case is established.").

Plaintiff brings a single USERRA action based on three instances of

discrimination that allegedly took place when plaintiff was not selected for

positions at Hanceville Middle School, Good Hope Elementary, and Holly Pond

Elementary.  In disposing of the latter two situations first, this court finds that

because plaintiff failed to brief the relevant issues relating to his non-selection for

the GHE and HPS positions, plaintiff has abandoned his discrimination claim to the

extent it was based on his non-selection for those two positions.  *See Coalition for*

*the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1302, 1326

(11th Cir. 2000) (concluding that failure to brief an issue amounts to abandonment

of the claim); *McGinnis v. Ingram Equipment Co.*, 918 F.2d 1491, 1496 (11th Cir.

1990) (citations omitted) ("A party normally waives its right to argue issues not

raised in its initial brief."); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314,

16

1322 (11th Cir. 2001) (finding that an issue not raised until party's supplemental

reply brief deemed abandoned).

The only remaining issue is the alleged discrimination that took place when

plaintiff was not-selected for the assistant principalship at HMS.  Thus, the court

must determine (1) whether Gambrill's military involvement was a motivating

factor for his non-promotion as an assistant principal at HMS, and (2) if so,

whether defendants can show that they would have made the same decision despite

plaintiff's military involvement.  Although a genuine issue of material fact exists as

to whether plaintiff's military involvement was a motivating factor in his non-

promotion, defendants can establish their affirmative defense as a matter of law,

warranting summary judgment granted in favor of defendants and denied against

plaintiff.

To prove that military involvement was a motivating factor, it is sufficient

for the plaintiff to show the defendant simply took it into account when making its

promotion decision.  *Coffman*, 411 F.3d at 1238 (citing *Brandsasse*, 72 F.Supp.2d

at 617); *Sanguinetti v. United Parcel Service, Inc.*, 114 F.Supp. 2d 1313, 1318

(S.D. Fla. 2000) (citing *Robinson*, 974 F.Supp. at 576)).  In the light most favorable

to the plaintiff, the evidence is as follows.  The interview panel used the applicants'

answers to a number of questions to evaluate the applicants.  The panel devised a

17

question to determine the involvement of its applicants in other activities because it was concerned that certain applicants (though not plaintiff) would not have enough time to devote to being assistant principal. The panel asked the plaintiff the question and the plaintiff disclosed his military involvement.  Then, a member of the panel stated that she did not think it possible to serve in the military and serve as assistant principal at the same time.  Ultimately, the plaintiff was not selected. Under these facts, a jury could reasonably conclude that the interview panel took plaintiff's military obligation into account as one factor in concluding that plaintiff should not be awarded the position.[1]

However, even if plaintiff can show his military involvement was a motivating factor in the defendants' decision to select Collins as the new assistant principal, the defendants may avoid liability if they show legitimate reasons alone "would have induced [them] to take the same adverse action." *Coffman*, 411 F.3d at 1238-39 (quoting *Sheehan*, 240 F.3d 1014).  As the evidence in the light most favorable to the plaintiff demonstrates, even if the interview panel knew nothing of plaintiff's military involvement, the panel would not have promoted him.  This court finds the interview panel would have selected Collins because of his superior

---

[1]The court notes that defendants have supplied ample evidence that counsels against summary judgment in favor of plaintiff on this element of the claim.

18

qualifications and performance during the interview.  First, it is significant that all

three interview panelists independently determined that Collins was the most

qualified applicant and concluded plaintiff was not the second or third most

qualified applicant.

Second, Collins' qualifications indicate that he was the best candidate.

Perhaps most significantly, Collins had experience as a public school administrator

because he had "filled-in" as assistant principal at HMS when needed.  Anderson

testified that such previous experience was an important quality because it was

"on-the-job training."  On the other hand, plaintiff had no experience as a public

school administrator.  Collins had taught at HMS for ten years; was teacher of the

year twice; led the baseball team to two state championships; served on the budget,

textbook, and scheduling committees; and already had a good rapport with the

principal, the faculty, and the students.  Plaintiff had no experience at HMS, has

never been nominated for teacher of the year at his school, and although he has

budgetary experience and served on a textbook committee, he has never assumed

these responsibilities at a middle school level; in fact, his only experience at the

middle school level was in an "aide" position for one year.  Further, after the

interviews, one interview panelist described Collins as empathetic, loyal, and

dedicated.  Plaintiff, however, came across as "unfeeling," as "being very – with no

19

compassion for the purpose . . . the purpose of enjoying children of that age."

The notes taken by Anderson and Abbot corroborate defendants' claims that Collins was the best applicant and would have been chosen regardless of plaintiff's military involvement.  For instance, their notes, which the interview panel members made with no knowledge that their writings would later be reviewed by a court in a federal military discrimination case, show that Collins offered specific examples of how and when he influenced students' lives–a factor Kretzschmar considered important–while plaintiff did not.[2]

Third, HMS and the Cullman County Board of Education have a demonstrated record of employing members of the uniformed services.  HMS employs two servicepeople, Charles Clingman and Kathy Bradford. Clingman is a

_____

[2]The notes Anderson took regarding Collins' answer to the question, "How have you had a positive influence on the lives of students?" state:

> Reading a book by Cal Ripkin – having a positive attitude.  Feels like he has a positive attitude. Through coaching - the students - he affected there [sic] lives to be a positive role model - trying to pass on right [and] wrong. Has had 13 students play college ball. Tries to influence students to persue [sic] higher ed.

Anderson's notes regarding plaintiff's response state: "For past 8-yrs w/ [Cullman County Board of Education] - worked w/ teachers to have an impact on students. Would have an opportunity to impact students. Have had numerous opportunities." Abbott's notes are substantially similar, though she added additional information regarding plaintiff's response to the question: "8 yrs – GHE, GHM, GHP, cent. office - worked with teachers. AL Mil Acad - 180 - direct interaction w/ all; positive influence on students including mil. exp."

physical education teacher who is serving his second tour in Iraq, and Bradford is also a teacher and an Air Force reservist who serves one or two days each month. After his first tour, the school hosted an assembly and reception for Clingman, which at least one of the interview panelists helped organize.  Moreover, when plaintiff first applied to and received a position at GHE, which is a position of the Cullman County Board of Education, he had been in the military for approximately four years.  Finally, Allen and Anderson both testified they would have made the same decision despite plaintiff's military involvement.

Thus, this court finds there were legitimate, non-discriminatory reasons, standing alone, that would have induced the defendants to not promote plaintiff to the position: the defendants promoted the best candidate and plaintiff was not the best candidate.  *See Hart v. Township of Hillside*, 228 Fed.Appx. 159, 162-63 (3rd Cir. 2007) (finding legitimate, non-discriminatory reasons, such as taking an interview too casually, being inappropriately dressed for an interview, and submitting to a psychological evaluation that determined plaintiff was immature, were a sufficient basis to determine, as a matter of law, that defendant-employer would not have hired plaintiff-serviceman regardless of his military involvement); *see also Maxfield v. Cintas Corp.*, 563 F.3d 691, 693-94 (8th Cir. 2009).

## IV. Conclusion

Having considered the foregoing, and finding that plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial on his claim against defendants, and that defendants Cullman County Board of Education and L. Hank Allen are entitled to judgment in its favor as a matter of law, it is **ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED** and plaintiff's partial motion for summary judgment be and hereby is **DENIED**.  Plaintiff's claim shall be **DISMISSED WITH PREJUDICE** by separate order.

**DONE** and **ORDERED** this 15th day of September 2009.


_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE